Charles E. Capp and Teresa M. Capp v. Commissioner.
Capp v. Commissioner
Docket No. 2105-66.
United States Tax Court
T.C. Memo 1968-53; 1968 Tax Ct. Memo LEXIS 246; 27 T.C.M. (CCH) 280; T.C.M. (RIA) 68053; March 29, 1968. Filed *246 The Commissioner determined deficiencies in income tax and additions to tax for fraud based on petitioner's failure to report income gained through defrauding his employer. The petitioner conceded the deficiency, leaving for determination only the issue of civil fraud. Held: The respondent has failed to show by clear and convincing evidence a specific intent on the part of petitioner to evade tax. Fraud not established. Lawrence R. Bold, 1200 City Nat'l Bank Bldg., Kansas City, Mo., for the petitioners. Larry K. Hercules, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined deficiencies in petitioners' income taxes for 1962 and 1963, and additions to tax under section 6653(b), I.R.C. 1954, [1] as follows: Taxable Year
Deficiency
Addition to Tax
1962
$313.47
$156.73
1963
764.80
382.40
*247 Petitioners have conceded liability for the deficiencies, thus leaving for our decision only the issue of the additions to tax because of petitioners' alleged civil fraud. 281 Findings of Fact Some of the facts have been stipulated and such facts, together with exhibits similarly stipulated, are found accordingly and are incorporated herein by this reference. A summary of the facts necessary to our conclusions and a decision of the issue before us follows. Petitioners are husband and wife and were residents of Kansas City, Kansas, at the time the petition was filed. Their joint income tax returns for the calendar years 1962 and 1963 were filed with the district director of internal revenue at Wichita, Kansas. Petitioner, Teresa M. Capp, is a party herein only by reason of having filed a joint income tax return with her husband, Charles E. Capp, and the latter will hereinafter be referred to as petitioner. During the calendar years 1962 and 1963, petitioner was employed by Central Printing Company, Inc., of Kansas City, Missouri, as a bookkeeper. His duties included *248 preparation of the payroll records, cash receipts journal, disbursement journal, accounts receivable, and cost records. He also prepared payroll checks for the employees. The company employed a C.P.A. who used petitioner's work as a basis to prepare tax returns, monthly and annual statements of income, and W-2 forms. Petitioner prepared no financial statements, corporate tax returns, or individual tax returns in his capacity as an employee of Central Printing Company. During the calendar years 1962 and 1963 petitioner received income not reported on his returns for those years as follows: *14 Amount
Source of Income
1962
1963
Petitioner caused Central Printing Company checks to be drawn, endorsed the name of the payee, and de- posited them in his own account
$ 154,48
$2,421.25
Petitioner caused Central Printing Company checks to be drawn, endorsed the name of the payee, and cashed them
1,332.95
600.00
Petitioner caused Central Printing Company checks to be used for the purchase of merchandise received by him
568.75
Petitioner cashed checks from petty cash 116.76
Total
$1,604.19
$3,590.00
A deficiency was determined by the respondent for *249 each of the years in question as the result of increasing taxable income by the unreported income. The respondent also determined that all or part of the underpayment of tax was due to fraud, and therefore an addition of 50 percent of the deficiency was asserted pursuant to section 6653(b), [2] as follows: Year
Deficiency
Addition to Tax
1962
$ 313.47
$156.73
1963 764.80
382.40
Totals $1,078.27
$539.13 Since petitioner has conceded the deficiency, the only issue is whether or not the respondent's determination as to additions to the tax should be sustained. Petitioner graduated from high school in 1948. Thereafter, during the years 1953-1957, he attended evening classes at Rockhurst College, Kansas City, Missouri, and completed 38 hours of business, accounting and tax-related *250 courses. However, his academic average for those courses was 1.42, or "D" minus. He also received the grade of "F" in logic and ethics, and a "D" in philosophy. One of his textbooks at college was a "Prentice Hall Tax Course, 1957," which stated that income from illegal business activities is taxable but that "* * * proceeds of embezzlement are not taxable to the embezzler." Petitioner did not thereafter take any tax courses or pursue an independent study of the law of taxation. Petitioner, however, held himself out as a tax expert. He discussed tax planning and practices in a braggadocian manner and claimed that he was studying to become a C.P.A. He prepared income tax returns for persons outside of his immediate family, and held himself out as knowledgeable in the field of Federal taxation. He reported on his 1959, 1962, and 1963 income tax returns that his occupation was that of an accountant. In fact, however, he was never licensed or employed as an accountant. In December of 1959 petitioner was hired on a part-time basis to handle the routine bookkeeping of Zephyr Lithographing Company, and its owner, Russell Warren. Petitioner prepared and signed the Warrens' joint return *251 for 1959 in 1960 as the 282 preparer thereof. He was paid for his services to Zephyr and the Warrens, but the record does not establish how much was paid or the year of payment. In 1962, while in the employ of Central Printing, petitioner purchased a Prentice-Hall Tax Guide for use in his work. He claimed a $32 deduction for such on his 1962 income tax return. Petitioner purchased this guide because of an anticipated increase in tax work, which never came to fruition, and petitioner never studied or used the materials at all. During his tenure with the Central Printing Company, petitioner took advantage of his position as sole bookkeeper, in order to modify the payroll records so that they "balanced" in the accounting sense of the word. Checks were written to certain employees, the proper signatures having been forged to the checks by petitioner, and then the proceeds were appropriated to his own use. Central's books and records were altered and falsified to conceal the fraudulent transactions. The scheme might have continued indefinitely but an employee named Peterson discovered that his W-2 form showed more income than he actually received. Peterson's W-2 form had been *252 prepared by a C.P.A. based on the payroll records prepared fraudulently by petitioner. A search of the company's canceled checks revealed a check payable to Peterson, and ostensibly signed by the proper authority of the company; however, no such check or money had ever been received by him. Feeling that something was wrong, Peterson showed the checks to his superior, Walker, who caused a search to be made of all of the company's canceled checks. The search revealed checks which were similarly irregular. Peterson contended that Central owed him the money shown on his W-2 form, but never received by him. He "stated his case" before the president of the company and asked to see the payroll book, which petitioner had maintained as a part of his bookkeeping duties. Petitioner, knowing that he had doctored the books to conceal his wrongdoing, refused to meet the request, and became violent. An altercation ensued between petitioner and Peterson. But the "cat was out of the bag," and petitioner's employment with Central Printing was terminated in December 1963, one month after Peterson had discovered the false check. Petitioner was subsequently convicted of willfully transporting two forged *253 checks in interstate commerce in violation of 18 U.S.C. 2314. Immediately after petitioner left Central's employment, he procured another job at Grimes-Joyce Printing Company as a bookkeeper. His duties were similar to those in his previous job, and so was his attitude of honesty toward his employer. He supplemented his income by forging checks at Grimes-Joyce in a pattern similar to his operation at Central. None of the income derived from petitioner's check forging and writing activities in 1962 and 1963 were reported in his income tax returns filed for those years. However, all of the illgotten income from Grimes-Joyce was reported on petitioner's 1964 return. The return for that year was filed after an investigation had been begun by the Internal Revenue Service regarding petitioner's unreported income from Central Printing, and he had been informed that income derived from the cashing of forged checks was taxable to him. Petitioner's returns for the years before us were not false or fraudulent with intent to evade tax and no part of the underpayment of tax for 1962 or 1963 was due to fraud. Opinion In his notice of deficiency, respondent determined *254 additions to the tax due in an amount equal to 50 percent of the underpayments under section 6653(b). Since petitioner has conceded the deficiency, the sole question remaining for decision is whether petitioner's actions bring him within the purview of that section of the statute. Section 7454(a) places the burden of proof in such an action upon the respondent to show "* * * petitioner has been guilty of fraud with intent to evade tax * * *." The standard which the respondent must meet in order to prove civil fraud is not a light one. In order to sustain his determination as to the additions for fraud, the respondent must affirmatively establish and prove by clear and convincing evidence actual and intentional wrongdoing on the part of the petitioner with intent to defraud the revenues. Lucrana Pigman, 31 T.C. 356 (1958). The intent required is the specific purpose to evade tax believed to be owing. Carter v. Campbell, 264 F. 2d 930 (C.A. 5, 1959); 283 Arlette Coat Co., 14 T.C. 751 (1950). Negligence, careless indifference, or disregard of rules and regulations will not suffice. Walter M. Ferguson, Jr., 14 T.C. 846 (1950). *255 Respondent has attempted to unveil a specific intent on the part of the petitioner to evade tax by channeling his evidence in two directions. First, that the petitioner's knowledge of Federal taxation was complete enough that he was aware of the rule requiring such illegally appropriated funds to be reported as income; and second, that petitioner's overall pattern of fraudulent activities is evidence of a scheme and purpose to defraud the Government of taxes actually due. In examining the position of the respondent, we must look to the conclusions which can clearly and convincingly be drawn from the evidence. Fraud can never be imputed or presumed; it implies bad faith and intentional wrongdoing and cannot be found merely from circumstances which give rise to only a suspicion of fraud. Davis v. Commissioner 184 F. 2d 86 (C.A. 10, 1950). The motive and purpose behind the fraudulent actions of the taxpayer are the criteria which must be examined to determine his specific intent. Carter v. Campbell, supra. A careful analysis of the record before us leads to the conclusion that respondent has not carried his burden of proof as to the alleged fraud. Petitioner's *256 knowledge of Federal tax laws was at most fragmentary and not well founded. At its base we find a night school collegiate background of business and accounting, but with a "D" minus average. When he studied taxation it was the law of the land, so stated in the text used, that "proceeds of embezzlement are not taxable to the embezzler." Commissioner v. Wilcox, 327 u.s./ 404 (1946). Although James v. United States, 366 U.S. 213 (1961), reversed the Supreme Court's earlier view and established that fruits of embezzlement were taxable, there is no evidence before us that petitioner knew or was aware of this change or even had reason to suspect that it had occurred. While his ignorance of the law is no excuse, we cannot assume or presume a fraudulent intent, it must be clearly and convincingly proved by the evidence. We recognize that there were boasts of the petitioner to his employers and associates of his tax knowledge, but flavoring those boasts with the petitioner's inability to discern fact from fiction, we believe the boasts were nothing more than puffing or "hot air." Petitioner's background as a bookkeeper, a mechanical job, does not lead us to conclude that petitioner *257 was aware of the rule after James that funds derived through embezzlement must be reported as income. We are aware of the line of cases which mentions the Federal taxation and accounting background of the taxpayers as a factor frequently useful in determining fraud. Meldon v. Commissioner, 225 F. 2d 467 (C.A. 3, 1955). However, we must conclude here that the smattering of knowledge of taxation and accounting acquired in the 1953-1957 period and possessed by this petitioner is not clear and convincing evidence of a specific intent to evade tax in 1962 and 1963 by the omission of income which was clearly not taxable during the years petitioner studied taxation. We conclude that the overall pattern of petitioner's fraudulent activities against his employers is likewise not clear and convincing evidence of a scheme to evade taxes. We recognize that the integrity of the petitioner is not one which precludes the existence of a pattern of fraud in his returns but suspicion, distaste and doubt are not sufficient. Respondent has not established to our satisfaction that the acts of the petitioner prove his intent to evade tax rather than merely to defraud his employers and conceal *258 his wrongdoing. Respondent has unveiled petitioner's scheme of fraud, but has been unable to clearly and convincingly show us that the scheme was designed or carried out with the intent of evading taxes. Likewise, there is no clear or convincing evidence that the omission of the unreported embezzlement income from petitioner's returns was other than inadvertent or due to petitioner's mistaken belief that they were not properly to be included. Respondent's attempt to establish omissions of other items of income at trial were entirely unsuccessful. The evidence before us is just not sufficient to carry respondent's burden. We conclude and hold that petitioner fabricated and executed the schemes employed for the purpose of appropriating the funds of his employer to his own use, and that no part of the scheme was fabricated or effected with the specific intent to defraud the Government of its tax revenues. We recognize that the line which must be drawn between an employee's defrauding of 284 his employer and his defrauding of the Government is shadowy and elusive. "The case must cross 'that narrow border line which persuades the judicial mind that clear and convincing evidence has *259 established fraud with specific intent to evade the tax.'" Carter v. Campbell, 264 F. 2d 930, 941 (C.A. 5, 1959). Petitioner was not a totally credible witness at trial; he appears to be a braggart who adopted a consistent pattern of defrauding his employers who granted him their trust. However, in the light of all evidence of record, we conclude that his general intent to bite the hands that fed him, is not, without more, a sufficient showing of a specific intent to evade taxes. With the dangerous smattering of accounting and tax knowledge in his ken, petitioner might well have mistakenly believed that his concealed and evil gains were not taxable income, but were rather fruits of embezzlement and not taxable to him. The evidence of record adduced to show petitioner's knowledge of taxation establishes that when he acquired that knowledge at night school he was taught that embezzled funds were not taxable to the embezzler. That was then the law under the Wilcox case, supra. We might guess or surmise that petitioner knew of the Supreme Court's subsequent holding in the James case in 1961, but such a guess would be a wild one and about as uneducated as petitioner himself *260 was in the field of taxation. It falls far short of clear and convincing proof of petitioner's intent to evade his taxes. We must hold that respondent has not established by clear and convincing proof that the petitioner had the requisite fraudulent intent which resulted in the underpayments of tax determined. Our findings reflect our factual determinations to this effect. Decision will be entered under Rule 50. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. SEC. 6653. FAILURE TO PAY TAX. * * * (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).↩